FILED
2017 Oct-30  PM 03:17
U.S. DISTRICT COURT
N.D. OF ALABAMA



# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

_____

|  |  |  |
|---|---|---|
| CARTHENIA W. JEFFERSON, | ) | |
|  | ) | |
| **Plaintiff,** | ) | |
| v. | ) | **Case No. 2:16-CV-00964-VEH** |
|  | ) | |
| NATIONSTAR MORTGAGE, LLC, | ) | |
|  | ) | |
| **Defendant.** | ) | |

_____ )

## NATIONSTAR'S BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................1

II.     UNDISPUTED MATERIAL FACTS ........................................................2

        A.      The Inception of Jefferson's Home Mortgage Loan ............................2

        B.      Aurora's 2010 Foreclosure and Early Procedural History of This
                Case .......................................................................................................3

        C.      Jefferson Adds Nationstar and the Insurance Defendants to the
                Case in December 2015, Shortly After She Settles with Aurora. ..........6

        D.      The 2010, 2011, and 2012 Property Damage and Jefferson's
                Insurance Claims ...................................................................................6

        E.      Jefferson and Nationstar's (Simple) History and Relationship ............9

III.    STANDARD OF REVIEW ......................................................................13

IV.     ARGUMENT AND CITATION TO AUTHORITY ....................................15

        A.      Jefferson's TILA Claim Is Time-Barred and Fails Because
                Nationstar is not a "Creditor" and Jefferson Has Presented No
                Evidence of a TILA violation.................................................................16

                1.      Jefferson's Claims are Time-Barred. ...............................16
                2.      Nationstar is not a "creditor" under the Act.....................17
                3.      There is No Evidence Nationstar Violated TILA. ...........19

        B.      Jefferson's FCRA Claim (Count Two) Fails Because Nationstar
                Never Received Notice of a Credit Dispute from a Credit
                Reporting Agency and Because There Is No Evidence of Improper
                Credit Reporting. ................................................................................19

        C.      Jefferson Has Presented No Evidence that Nationstar Violated the
                FDCPA. ...............................................................................................22

V.      CONCLUSION.........................................................................................28

## I.     INTRODUCTION

In her own words, Jefferson has sued Nationstar because "Nationstar came in after Aurora . . . as a continuance of this deplorable matter."[1]   However, Jefferson resolved her claims against Aurora in 2015, and is now trying to "double dip" and hold Nationstar responsible for the prior servicer's conduct. Jefferson has presented no evidence that <u>Nationstar</u> engaged in any unlawful conduct, and merely continues to grind a very old, very dull axe pertaining to events in 2010 – well before Nationstar became involved with this Loan.

Although the procedural history of this matter is complex, the facts are not. Jefferson has never made a payment to Nationstar and has refused to provide the information necessary for Nationstar to release the disputed insurance proceeds. Jefferson also admits that she never disputed credit reporting or otherwise complained about Nationstar's servicing of the Loan. Most importantly, however, Jefferson has not presented any evidence that Nationstar provided false information, failed to provide proper notices, or otherwise violated the FDCPA, FCRA, or TILA. What remains is a plaintiff who is disgruntled by the actions of a prior servicer, but whose bare-boned and scattershot allegations against Nationstar are unsupported by the evidence. Accordingly, Nationstar is entitled to summary judgment.

---

[1] *See* Exhibit A, 6-16-17 Deposition of Carthenia Jefferson, 253:10-18.

## II.      UNDISPUTED MATERIAL FACTS

### A. The Inception of Jefferson's Home Mortgage Loan

1.      On August 5, 2006, Jefferson executed a promissory note (the "Note") in favor of Home Loan Center, Inc. dba Lending Tree Loans ("Lending Tree") in the amount of $152,000.00. *See* 6-16-17 Deposition of Carthenia Jefferson, attached hereto as **Exhibit A**, 76:5-78:7, 89:8-18 & Exhibit 7 (Note); Declaration of Fay Janati, attached hereto as **Exhibit B**, ¶ 4.

2.      Jefferson secured the Note by giving a mortgage on the certain property commonly known as 2128 Oakwood Drive, Birmingham, Alabama 35215 (the Property") in favor of Mortgage Electronic Registration Systems, Inc. ("MERS"), solely as nominee for Lending Tree and its successors and assigns, recorded in Book LR 200613, Page 28564, in the Office of the Judge if Probate of Jefferson County, Alabama (the "Mortgage" and, together with the Note, the "Loan"). *See* Ex. A, 82:12-83:2; Exhibit 8 (Mortgage); Ex. B, ¶ 5.

3.      The Note required Jefferson to make monthly payments on the first day of each month to satisfy the debt. *See* Ex. A, 79:10-21 & Ex. 7.

4.      Jefferson knowingly executed the Note and Mortgage, understood the payment terms, understood that she would be in default if she did not pay the full amount by the due date, and understood the fees, costs, and expenses that could be charged. *See* Ex. A, 76:5-78:7, 89:8-18.

2

5.     Jefferson also understood that the Mortgage required her to pay all, assessments, and like charges attributable to the Property, that she was required to have insurance on the Property (otherwise insurance would be lender-placed and become additional borrower debt), and that she was to notify the lender and insurance carrier in the event of a loss and make repairs to the Property before insurance proceeds should be released. *See* Ex. A, 84:16-89:18.[2]

### B. Aurora's 2010 Foreclosure and Early Procedural History of This Case[3]

6.     Aurora Loan Services, LLC ("Aurora") serviced the Loan from the first payment due on the Loan (October 2006) until the servicing of the loan transferred to Nationstar on July 1, 2012. *See* Doc. 1-3 at 240, ¶¶ 8-9 (The Declaration of Cassandra Leet).

7.     Jefferson fell behind on the Loan payments in 2009. *See* Ex. A, 96:21-23.

---

[2] The Mortgage also provides that the lender has the "right to hold such insurance proceeds until lender has had an opportunity to inspect such property to ensure the work has been completed to the lender's satisfaction, provided that such inspection shall be undertaken promptly" . . . and that the proceeds may be dispersed in a series of payments as the work us completed" which Jefferson understood and agreed to. *See* Ex. A., 87:16-88:17.

[3] As this Court noted, "this is a "procedurally complex civil action." *See* Doc. 26 at 2. Accordingly, Nationstar adopts and incorporates the procedural history set forth in this Court's Order on Jefferson's Motion to Remand (Doc. 26) and provides only a cursory summary of key dates and actions here. *Id.*

8.     In May 11, 2010, Aurora foreclosed on the Property, and a foreclosure deed vested title in Federal National Mortgage Association ("Fannie Mae"). *See id.* at 244-45, ¶¶ 23-24 & Ex. M.[4]

9.     On December 4, 2011, Aurora filed a lawsuit in the Jefferson County Circuit Court, seeking to set aside the foreclosure and reinstate the Mortgage (the "Original Complaint"). *See* Doc. 1-1 at 1.

10.     On May 11, 2012, Jefferson answered the Original Complaint and asserted counterclaims against Aurora, Fannie Mae, and Sirote & Permutt, PC ("Sirote") (the "Original Counterclaim"). *See* Doc. 1-1 at 51.

11.     Among other things, Jefferson claimed that as a result of Aurora's foreclosure, Alfa Insurance Company canceled her home insurance policy. *See id.* at 55-56.

12.     Because there was no insurance on the Property in 2012, Aurora lender-placed insurance, which increased Jefferson's monthly payments; and Jefferson fell behind on her re-instated Mortgage while Aurora was servicing the Loan. *See* Ex. A, 94:20-95:7; 106:14-117:18 (Q. "So you chose to pay the lesser amount on the assumption that they were going to fix the insurance?" A. "Yes").

---

[4] Although irrelevant to Jefferson's claims against Nationstar, *see* the Declaration of Cassandra Leet (Doc. 1-3 at 240), for a detailed explanation, from Aurora's perspective, of what happened to cause the foreclosure, and what occurred in the months before and after the foreclosure.

13.     While the Original Complaint and Original Counterclaim were pending, on July 1, 2012, servicing of the loan transferred from Aurora to Nationstar. *See* Ex. B, ¶ 8; Ex. A, Ex. 16 (Welcome Letter).

14.     When Nationstar began servicing the Loan in July 2012, Jefferson was behind on her Mortgage payments and next due for the December 2011 payment. *See* Ex. B, ¶ 13; Doc. 1-3 at 240, ¶ 15.

15.     In July 2012, after it took over servicing of the Loan, Nationstar applied funds in the Loan suspense account as the December 2011, January 2012, and February 2012 payments, which made the Loan next due for the March 2012 payment (which is where it currently stands). *See* Ex. B, ¶ 14; Doc. 1-3 at 240, ¶ 15.

16.     On December 2012, the Original Complaint was resolved by a Consent Order (1) expunging the foreclosure deed, (2) setting aside the foreclosure sale, and reinstating the Mortgage, leaving only the Original Counterclaim against Aurora and Fannie Mae.[5] *See* Doc. 1-2 at 116-17.

17.     In November 2015, Aurora and Jefferson settled their dispute and the Original Counterclaim against Aurora was dismissed, leaving only the Original

---

[5] The Court granted Sirote's motion to dismiss on August 12, 2012. *See* Doc. 1-1 at 266.

Counterclaim against Fannie Mae. *See* Doc. 1-10 at 145-46, 171; Ex. A, 117:18-20.[6]

### C. Jefferson Adds Nationstar and the Insurance Defendants to the Case in December 2015, Shortly After She Settles with Aurora.

18.    One month after settling with Aurora, on December 11, 2015, Jefferson filed an Amended Counterclaim adding claims against Nationstar, QBE First Insurance Agency, Inc., Balboa Insurance Company, and QBE Americas, Inc. (collectively, the "Insurance Defendants). *See* Doc. 1-11 at 6-26.

19.    Nationstar and the Insurance Defendants removed the case to this Court on January 15, 2015 and, ultimately, this Court remanded the state law claims and retained jurisdiction only of the claims against Nationstar arising under the Truth in Lending Act ("TILA"), the Fair Credit Reporting Act ("FCRA"), and the Fair Debt Collection Practices Act ("FDCPA") *See* Docs. 1, 26.

20.    On October 26, 2016, Jefferson filed an Amended Complaint against Nationstar, including only the FCRA, TILA, and FDCPA claims. *See* Doc. 32.

### D. The 2010, 2011, and 2012 Property Damage and Jefferson's Insurance Claims[7]

---

[6]   To whatever degree Jefferson's claims against Nationstar are based upon actions by Aurora, they are barred by the doctrine of *res judicata* due to the settlement and dismissal of the Original Counterclaim.

[7]   Based on this Court's remand of the state law claims for lack of supplemental jurisdiction, and the allegations plead in the federal TILA, FCRA, and FDCPA claims, the insurance claims and dispute referenced in this section should not be the basis for the aforementioned federal claims now before this Court. Nationstar provides this information merely as background. However, even to the extent they are deemed relevant, they do not preclude summary judgment.

21.     Before Nationstar began servicing the Loan in July 2012, the Property suffered damage from a October 2010 burglary, April 2011 tornado, and January 2012 tornado (collectively, the "Damage"). *See* Ex. A, 121:14-122:4.

22.     Jefferson made insurance claims for the Damage (the "Insurance Claims"). *See* Ex. A, 122:5-122:8.

23.     On July 2, 2013 and August 15, 2013, QBE First Insurance Agency, Inc. remitted two checks to Aurora Bank FSB "For the Acct of Carthenia Jefferson" in the amounts of $1,105.23 and $18,867.77, respectively, to resolve the Insurance Claims, which in turn Aurora remitted to Nationstar – who was then servicing the Loan (the "Insurance Funds").[8] *See* Ex. B, ¶ 19, Ex. 7.

24.     Immediately after Nationstar received the Insurance Funds, beginning on September 23, 2013, Nationstar began sending Jefferson letters asking her to contact Nationstar regarding the Insurance Claims. *See* Ex. A, 176:22-177:19, Ex. 21; Ex. B, ¶¶ 21-23, Ex. 8.

25.     Nationstar sent these letters to Jefferson at the Property address on or about 9/23/13, 10/18/13, 12/3/13, 12/17/13, 1/13/14, 3/24/15, 5/15/15, 6/15/15, 7/14/15, 8/26/15, 10/9/15, 11/18/15, and 12/1/15. *See* Ex. A, 176:22-187:4, Exs. 21-33; Ex. B, ¶ 22, Ex. 8.

---

[8] Jefferson's claims against the Insurance Defendants appear to involve (1) alleged misrepresentations regarding when the Insurance Claims were initiated and (2) the amount of the Insurance Funds. *See* Ex. A, 321:17-323:22.

26.    Jefferson did not respond to any of the letters. *See* Ex. A, 196:21-197:21; Ex. B, ¶ 26. For example, when asked about the first letter Nationstar sent regarding the insurance proceeds on September 23, 2013, Jefferson testified:

Q.    Okay. So you didn't respond to this letter?

A.    No, sir.

*See* Ex. A, 117:14-16.

27.    According to Jefferson, she gave every letter she received from Nationstar to her attorney without opening it. *See* Ex. A, 177:10-13, 204:13-205:1.3.

28.    Jefferson never completed Third Party Authorization form that would have allowed Nationstar to speak with her attorney. *See* Ex. A, 173:23-176:1 "Anything that had Aurora, Nationstar since the litigation has started, I did not even open, I referred it to my attorney"); Ex. B, ¶ 27.

29.    In October 2013 and March 2015, Nationstar also sent Jefferson letters that had a detailed explanation of the documents/information it needed to release the Insurance Funds (and included the forms themselves). *See* Ex. A, 167:20-168:10, Ex, 20; Ex. B, ¶ 23.

30.    Jefferson did not provide Nationstar any of the documents requested nor did she return any of the forms included in the October 2013 or March 2015

letters, including a Certificate of Intent to Repair. *See* Ex. A, 169:6-174:5; Ex. B, ¶ 26.

31.     After Jefferson filed her suit against Nationstar, Nationstar's counsel continued to write letters and emails to Jefferson's counsel to try and secure the information needed to release the Insurance Funds. There was no response. *See* Ex. A, 187:9-197:21, Exs.34-39.

32.     Nationstar has not been able to release the Insurance Funds to Jefferson because she has not filled out and/or provided the required documents and Nationstar has not inspected any repairs to the Property (assuming any such repairs have been made). *See* Ex. A, 196:21-197:21; Ex. B, ¶ 29.[9]

33.     Nationstar is still holding the Insurance Funds in the Loan suspense account, and is prepared to release them as soon as Jefferson satisfies the requirements for doing so. *See* Ex. B, ¶ 30.

### E. Jefferson and Nationstar's (Simple) History and Relationship.

34.     Jefferson's last payment on the Loan was on or about June 2012, while Aurora was still servicing the loan. *See* Doc. 1-9, p. 157 (November 26, 2013 Deposition of Carthenia Jefferson 156:19-157:3); Ex. B, ¶ 7; Ex. A, 159:14-23.

---

[9] Nationstar also called Jefferson about the Insurance Claims and, on most occasions, either left voicemails or Jefferson refused to speak with Nationstar. *See* Ex. B, ¶ 24. Nationstar did speak with Jefferson in March 2015, however, when Jefferson asked Nationstar to send her proof of the insurance information needed (which is what prompted Nationstar to send her the March 2015 letters). *See* Ex. B, ¶ 25.

35.     Jefferson has never made a payment to Nationstar. *See id.*; Ex. A, 156:12-157:18.

36.     Nationstar tried to help Jefferson resolve the payment delinquency and bring the Loan current in March 2015, by *unilaterally* (that is, without requiring Jefferson to complete a loan modification application) offering Jefferson loan modifications that would lower her interest rate from 7.375% to 4%, significantly reducing her payments. *See* Ex. A, 205:14-206:16 & Ex. 41; Ex. B, ¶¶ 15, Ex. 5.

37.     Nationstar sent Jefferson the loan modification offer in March 2015, but Jefferson did not respond to Nationstar's offer.  *Id.* at ¶ 16.

38.     After Jefferson sent Nationstar a hardship letter in April 2015, Nationstar again offered Jefferson a loan modification in June, September, and November 2015, but Jefferson did not respond or make the trial plan payments on any of these offers. *See* Ex. A, 209:1-210:16, 211:3-15, 212:12-213:3 & Exs. 42-44, 46; Ex. B, ¶ 17, Ex. 6.

39.     During the time it has been servicing the Loan, Nationstar has sent all of the required Loan notices and disclosures to Jefferson. *See* Ex. B, ¶ 31.

40.     All of the notices, disclosures, letters, and/or communications Nationstar sent to Jefferson regarding her Loan were true and accurate. *See* Ex. B, ¶ 32.

41.     For example, when Nationstar took over servicing of the Loan in July 2012, in its initial communication, it sent Jefferson a "welcome letter", a Notice of Assignment, Sale, or Transfer of Servicing Rights letter, and a debt validation letter. *See* Ex. A, 152:6-155:11, Exs. 16-18; Ex. B, ¶¶ 10-11. These letters contained true and accurate information concerning Jefferson's Loan and Jefferson did not dispute or raise any concerns with Nationstar about these letters. *See* Ex. B, ¶ 32.

42.     Regarding the letters, Jefferson testified:

Q.      Today, as we sit here, do you know if there is anything wrong with what is on those three letters?
A.      As far as this total current amount due it, I don't know what the current total amount due is. Because, like I said, so much has been going on, so I am seriously uncertain is that is correct.
Q.      You don't have any personal knowledge either way, you just have reason to doubt that number?
A.      I have reason to doubt that.
Q.      But as we sit here today, you can't say right or wrong?
A.      I don't know, u-huh. But I have serious concerns.
Q.      I understand. But you didn't tell them anything about this?
A.      I did not. . . .

*See* Ex. A, 154:11 –155:6, 156:7-11 (Q. "And as we sit here today you don't have any personal knowledge of whether there is anything right or wrong in these three letters?" A. "I don't.").

43.     All of the amounts Nationstar charged to Jefferson's Loan, including, but not limited to, fees, expenses, and other charges, were correct and valid under the terms of the Mortgage. *See* Ex. B, ¶¶ 34.

44.   All of the amounts charged to the Loan escrow account were correct and valid under the terms of the Mortgage. *See id.*

45.   Nationstar accurately reported the default status of the Loan and the amount owed on the Loan to Jefferson, and Jefferson has never disputed the validity or accuracy of Nationstar's letters. *See* Ex. A, 204:5-205:15 & Ex. 40; Ex. B, ¶¶ 33, 35, 37-38, Ex. *.

46.   In fact, Jefferson has never communicated any concerns about her Mortgage to Nationstar. *See* Ex. A, 215:3-216:1; *See* 7-10-17 Deposition of Carthenia Jefferson, attached hereto as **Exhibit C**, 602:2-603:4; Ex. B, ¶¶ 33, Ex. 8.

47.   Nationstar has never received a dispute (or any other communication) from Jefferson regarding credit reporting on the Loan.[10] *See* Ex. B, ¶ 37.

48.   Nationstar has never received notice of a dispute from the Credit Bureaus/Credit Reporting Agencies regarding the credit reporting on the Loan. *See* Ex. B, ¶ 38.

49.   Nationstar accurately credit reported on Jefferson's Loan. *See* Ex. B, ¶ 35.

---

[10] Indeed, Jefferson does not even know if Nationstar has ever credit reported about her or the Loan to the credit bureaus, she never disputed the credit reporting with the credit bureaus or Nationstar, and has produced no evidence that anyone ever did on her behalf. *See* Ex. A, 217:6-218:7.

50.     When asked during her deposition about her interactions with
Nationstar, Jefferson testified as follows:

Q.     So the last time we talked, I think I understood you to tell me that you
       really do not remember reading anything or communicating in any
       way with Nationstar?
A.     I do not recall.
Q.     You don't recall having conversations or receiving anything in writing
       from Nationstar?
A.     If I received something in writing I forwarded it to my attorney.
Q.     And you don't recall what if any of those things said that you
       received?
A.     No, sir.
Q.     And you don't recall the substance of any conversations you had with
       Nationstar?
A.     No, sir.
Q.     So you don't know of anything Nationstar told you that was untrue?
A.     I don't remember at this time.
Q.     And you don't know whether Nationstar has told anybody else
       anything that's untrue either?
A.     All I know, I was told that they had insurance money and have not
       released it at this time.

*See* Ex. C, 602:2-603:4.

## III.   STANDARD OF REVIEW

Summary judgment is proper when there is no genuine issue of material fact
and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P.
56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  To defeat summary
judgment, the non-moving party must "go beyond the pleadings and – by pointing
to affidavits, or depositions, answers to interrogatories, and/or admissions on file –
designate **specific facts** showing that there is a genuine issue for trial." *Adams*, 237

F. Supp. 3d at 1195 (emphasis added) (citing *Celotex*, 477 U.S. at 324). A dispute is genuine, "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 1196 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Although all reasonable doubts about the facts must be resolved in favor of the non-movant, "if the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* (citing *Anderson*, 477 U.S. at 249) (other citations omitted).

Specific factual evidence is required. *See id.* (quoting *Gargiulo v. G.M. Sales, Inc.*, 131 F.3d 995, 999 (11th Cir. 1997)( [The non-moving party] must come forward with specific factual evidence, presenting more than mere allegations.")). "A plaintiff may not simply rest on her allegations made in the complaint; instead, as the party bearing the burden of proof at trial, she must come forward with at least some evidence to support each element essential to her case at trial." *Id.* (citation omitted). "Summary judgment may be granted if the non-moving party's evidence is merely colorable or is not significantly probative." *Id.* (citing *Sawyer v. Southwest Airlines Co.*, 243 F. Supp. 2d 1257, 1262 (D. Kan. 2003) (citing *Anderson*, 477 U.S. at 250-51)); *see also LaRoche v. Denny's, Inc.*, 62 F. Supp. 2d 1366, 1371 (S.D. Fla. 1999) ("The law is clear . . . that suspicion, perception, opinion, and belief cannot be used to defeat a motion for summary judgment.").

## IV.   ARGUMENT AND CITATION TO AUTHORITY

Despite two full days of deposition testimony, Jefferson could not name a single thing Nationstar has done wrong. Although her Amended Complaint throws the proverbial "kitchen sink" at Nationstar in terms of alleged mortgage servicing errors, these allegations stand bare because Jefferson was unable to identify a single fact or document in support. Instead, when given the chance to provide *any and all* facts in support of her claims, Jefferson could only say "I think Nationstar continue what Aurora started, that's what I really believe." *See* Ex. A, 254:8-255:23. At the summary judgment stage, a plaintiff cannot stand on "suspicion, perception, opinion and belief" – she must "go beyond the pleadings and . . . designate **specific facts** showing that there is a genuine issue for trial.*" Adams*, 237 F. Supp. 3d at 1195 (emphasis added) (citing *Celotex*, 477 U.S. at 324); *LaRoche v. Denny's, Inc.*, 62 F. Supp. 2d 1366, 1371 (S.D. Fla. 1999). Jefferson has not done so.

Tellingly, two Northern District of Alabama judges have recently dismissed TILA, FDCPA, and FCRA claims based on very similar allegations filed by the same plaintiff's lawyer, for many of the same reasons Nationstar is seeking summary judgment in this case.[11] *See Adams v. Bank of America, N.A.*, 237 F.

---

[11] *Compare* Doc. 32, *with Adams v. Bank of America, N.A.*, 2:15-cv-01855-RDP (Doc. 24) (Second Amended Complaint), attached hereto **Exhibit D**. *Compare also* Doc. 32 *with Bowling v. U.S. Bank, N.A. et. Al*, No: 2:13-cv-01881-MHH (Doc. 5) (Counterclaim), attached

Supp. 3d 1189 (N.D. Ala. 2017)*; see also Bowling v. U.S. Bank, N.A. et al.*, No: 2:13-cv-01881-MHH (N.D. Ala. April 30, 2017) (Doc. 69).   For the reasons explained in *Adams* and *Bowling*, which are set forth herein, and for the other reasons explained below, summary judgment is due to be granted.

### A.   Jefferson's TILA Claim Is Time-Barred and Fails Because Nationstar is not a "Creditor" and Jefferson Has Presented No Evidence of a TILA violation.

Jefferson's Truth in Lending Act ("TILA") claim fails as a matter of law because (1) her claims are time-barred by TILA's one-year statute of limitations and (2) because Jefferson has not established that Nationstar is a "creditor" as defined by the Act. Jefferson's TILA claim also fails because she has not identified any facts or evidence that Nationstar violated TILA.

#### 1.   Jefferson's Claims are Time-Barred.

Jefferson alleges that Nationstar violated TILA and Regulation Z because Nationstar "did not provide a proper copy of the notices required by the Act." *See* Doc. 32, ¶ 71.  Pursuant to 15 U.S.C. § 1640(e), all TILA claims must be brought "within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e); *see also Adams*, 237 F. Supp. 3d at 1204. The violation "occurs" when the transaction is consummated. *Adams*, 237 F. Supp. 3d at 1204 (citing *Velardo v.*

---

hereto as **Exhibit** D. For example, the TILA claims in this case, *Adams*, and *Bowling* are <u>exactly the same, word-for-word</u>, except for names and dates. *Compare* Doc. 32 ¶¶ 66-76 *with* Ex. C ¶¶ 46-56 (*Adams*). Likewise, the FCRA pleading in this case and *Adams* are nearly identical, except for names and dates. *Compare* Doc. 32 ¶¶ 54-65 *with* Ex. C ¶¶ 60-71 (*Adams*).

*Fremont Inv. & Loan*, 298 F. Appx. 890, 892 (11th Cir. 2008)). Furthermore, for purposes of the statute of limitations, "[n]ondisclosure is not a continuing violation." *Id.* Accordingly, where a plaintiff is affirmatively seeking money damages for an alleged TILA violation, as is the case here,[12] the claims must be brought within one year of the date that the mortgage loan is consummated. *Id.*

In this case, the Loan was entered into on August 5, 2006. *See* Ex. A, Exs. 7-8; Ex. B, ¶ 4.  Nationstar took over servicing of the Loan on July 1, 2012, and Nationstar has never modified Jefferson's Loan.  *See* Ex. B, ¶¶ 8, 18. Jefferson did not sue Nationstar until December 11, 2015 – long after the 1 year and 30 day deadline imposed by the statute of limitations.  *See Squires v. BAC Home Loans Servicing, LP*, No. 11-0413-WS-M, 2011 WL 5966948, at \*2 (S.D. Ala. Nov. 29, 2011) (recognizing that TILA violations regarding notice of sale/transfer must be brought within 1 year and 30 days of the event). Accordingly, Jefferson's TILA claim is barred by the statute of limitations. *See Adams*, 237 F. Supp. 3d at 1204 (Judge Proctor dismissing identical TILA allegations from same plaintiff's counsel); *see also Bowling*, 2:13-cv-01881 (Doc. 69 at 10-11) (Judge Haikala dismissing for same reason).

### 2.      Nationstar is not a "creditor" under the Act.

---

[12] *See* Doc. 32, ¶ 69.

Under TILA's plain language, a private right of action may only be brought against a "creditor." *Bush*, 2016 WL 324993, at *3 (citing 15 U.S.C. § 1604(a)). A "'creditor' refers only to a person who (1) regularly extends consumer credit, and (2) 'is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement.'" *Adams*, 237 F. Supp. 3d at 1204 (quoting 15 U.S.C. § 1602(g)).

Here, Jefferson fails to establish both prongs of the test. First, Jefferson has presented no evidence that Nationstar regularly extends consumer credit. Second, the undisputed evidence is that Jefferson executed the Note in favor of Lending Tree and the Mortgage in favor of MERS as assignee for Lending Tree. *See supra*, ¶¶ 1-2, 6; Ex. B, ¶ 5, 40.  Thus, it was Lending Tree—and not Nationstar—"to whom the debt arising from the consumer credit transaction [was] initially payable." Indeed, Nationstar has never owned the Loan, and has merely serviced the Mortgage since 2012. Ex. B, ¶ 8, 40. The law is clear that TILA creates liability for loan *creditors* and not loan *servicers* like Nationstar. *See e.g.*, *Lucien v. Fed. Nat. Mortg. Ass'n*, 21 F. Supp. 3d 1379, 1383 (S.D. Fla. 2014) ("[A] servicer, cannot be held liable under 15 U.S.C. § 1640. **Indeed, the text of TILA's civil damages provision only provides for creditor liability—not servicer liability**. 15 U.S.C. § 1640(a) ("... any creditor who fails to comply with any requirement

imposed under this part ...") (emphasis added); *Adams*, 237 F. Supp. 3d at 1204-05;

*Miller v. Nationstar Mortgage*, 6:11-cv-1337-Orl-22DAB, 2013 WL 12091325, at

*12 (M.D. Fla. April 10, 2013) (holding, in a case with similar facts, that

Nationstar is not a creditor under TILA).[13]   As a result, Nationstar is entitled to

summary judgment on Count Three.

### 3.      There is No Evidence Nationstar Violated TILA.

Finally, although Jefferson's TILA claims are clearly due to be dismissed as

a matter of law for the reasons set forth above, it is worth noting that Jefferson has

also failed to present a single fact to support her TILA claim, and the undisputed

evidence is that Nationstar did send her the required Loan notices and disclosures,

and that the information contained therein was true and accurate. *See* Ex. B, ¶¶ 31-

32.

### B.      Jefferson's FCRA Claim (Count Two) Fails Because Nationstar Never Received Notice of a Credit Dispute from a Credit Reporting Agency and Because There Is No Evidence of Improper Credit Reporting.

---

[13] *See also Khan [v. Bank of N.Y. Mellon]*, 849 F.Supp.2d [1377,] at 1379 [(S.D. Fla. 2012)] ("TILA, however, does not impose liability on servicers, but rather provides a private cause of action against 'creditors who fail [ ] to comply with any requirement imposed under ... section 1635 of this title [and] subsection (f) or (g) of section 1641' "); *Runkle v. Fed. Nat'l Mortg. Assoc.*, 905 F.Supp.2d 1326, 1331 (S.D.Fla.2012) (partially vacated on other grounds) (same); G*aleano v. Fed. Home Loan Mortg. Corp.*, No. 12–CV–61174, 2012 WL 3613890 (S.D. Fla. Aug. 21, 2012) (same). Because servicers cannot be held liable under TILA, and, by extension, regulations promulgated thereunder, Plaintiffs' claims against Green Tree are dismissed."); *see also Barnes v. Carrington Mortg. Servs., LLC*, No. CV 15-6465 (CCC-MF), 2016 WL 3018693, at *1 (D.N.J. May 24, 2016) ("The statute refers only to a creditor's liability—not a loan servicer's.").

In Count Two, Jefferson claims Nationstar violated the FCRA because it "inaccurately report[ed] that Jefferson was delinquent in her mortgage loan and in Default;" (2) and "[d]espite receipt of the dispute from [Jefferson and the CRAs] [Nationstar] failed to properly investigate and respond. . ." *See* Doc. 32, ¶¶ 55-56.

Jefferson alleges that Nationstar is a "furnisher" of credit information. *See* Doc. 32, ¶ 56. Under the FCRA, a private right of action may be brought against a furnisher "**only if the furnisher received notice of the consumer's dispute from a credit reporting agency**." *Bowling*, 2:13-cv-01881-MHH (Doc. 69 at 15) (emphasis added) (quoting *Green v. RBS Nat'l Bank*, 288 Fed. Appx. 641, 642 (11th Cir. 2008) (citing 15 U.S.C. § 1681s-2(b))); *see also Adams*, 237 F. Supp. 3d at 1206 (citing *Rice v. JPMorgan Chase Bank NA*, No. 7:14-CV-00318-LSC, 2014 WL 3889472, at *4 (N.D. Ala. Aug. 5, 2014)). Therefore, Jefferson's allegations that Nationstar inaccurately credit reported, and that Nationstar failed to investigate after *she* disputed the credit reporting directly to Nationstar fail under 15 U.S.C. § 1681s-2(a) of the FCRA, which does not allow for a private right of action. *See* 15 U.S.C. § 1681s-2(a); 1681s-2(c)(1). Thus, these allegations cannot support her FCRA claim. However, even if that were not the case, the evidence shows these allegations are without merit. Nationstar properly credit reported, and Jefferson never disputed the credit reporting with Nationstar. *See* Ex. A, 217:7-218:7; Ex. B, ¶¶ 35, 37.

Accordingly, the only remaining issue before the Court on Jefferson's FCRA claim is whether Nationstar received a dispute from a CRA and thereafter failed to conduct an investigation to verify the accuracy of its credit reporting. *See Adams*, 237 F. Supp. 3d at 1206 (holding that the "obligation [to investigate a dispute] is only triggered when the furnisher receives notice from the consumer reporting agency of the consumer's dispute") (citing *Green*, 288 Fed. Appx. at 642). Here, the undisputed evidence is that Nationstar never received notice of any dispute from the CRAs regarding the Loan; accordingly, Nationstar's duty to investigate was never triggered. *See* Ex. A, 217:17-218:7; *See* Ex. B, ¶ 38. Regarding credit reporting, Jefferson testified:

> Q.   Are you aware of whether Nationstar has credit reported you to the credit bureaus?
> A.   I'm not aware.
> Q.   Are you aware of whether you have ever disputed any credit report that Nationstar has filed regarding you?
> A.   I referred everything to my attorney.
> Q.   So you don't know –
> A.   No, sir.
> Q.   Do you know if anyone has ever disputed any credit reporting Nationstar has done to the credit bureaus?
> A.   I don't know.
> . . .
> Q.   You don't know about any disputes on credit reporting to Nationstar or to the credit bureaus?
> . . .
> A.   I don't know.

*See* Ex. A, 217:17-218:7.

Because there is no private right of action for a majority of Jefferson's FCRA claims, and because Nationstar never received a dispute from the CRAs (or Jefferson), or violated any duty under the FCRA, Nationstar is entitled to summary judgment on Count Two.[14]

## C.   Jefferson Has Presented No Evidence that Nationstar Violated the FDCPA.

Jefferson's FDCPA claim in the Amended Complaint—Count One—is a scattershot grouping of allegations, designed to be a "catchall" for Nationstar's alleged wrongful conduct. *See* Doc. 32, ¶¶ 38-53. However, throughout two full days of deposition testimony, Jefferson could not recall a single thing Nationstar did wrong other than "continue what Aurora started" and refuse to release the insurance proceeds. *See* Ex. C, 602:2-603:4. When shown the principal balance of the debt, for example, Jefferson admitted she had no knowledge that it was incorrect. *See* Ex. A, 288:3-289:11. When asked about her knowledge of Nationstar's alleged acceleration of the loan or notice of foreclosure, she testified that she had no knowledge of an acceleration or notice of foreclosure. *See id.* 216:2-19.[15] Although she alleges that the statements she received from Nationstar

---

[14] Although the other reasons presented are sufficient for dismissal of this Count, it is also worth noting that Jefferson cannot establish that she has suffered any actual damages as a result of any alleged improper credit reporting.

[15] Even assuming Nationstar had taken steps towards foreclosure, Jefferson has also failed to provide any facts to show that Nationstar had "no present right to foreclose" as is a required showing under the statute.

are incorrect, in her deposition testified that she does not recall ever getting any statements from Nationstar. *See id.*, 215:11-216:1. When asked whether she was "aware of any specific provisions in the Note or Mortgage that Nationstar has breached", she answered "No, sir." *See* Ex. A, 216:2-217:1.

Because "[Jefferson's] FDCPA allegations are threadbare and conclusory and do not "explain how the [Nationstar] violated the FDCPA", it is Jefferson's burden to "come forward with specific factual evidence." *See Bowling*, 2:13-cv-01881-MHH (Doc. 69 at 17); *Gargiulo v. G.M. Sales, Inc.*, 131 F.3d 995, 999 (11th Cir. 1997). Jefferson has not done so. Rather, the undisputed evidence is that Nationstar sent Jefferson all the required notices and disclosures under the Mortgage, and that the information contained therein was true and accurate. *See* Ex. B, ¶¶ 31-32, 34.

The stated purpose of the FDCPA is to "eliminate abusive debt practices by debt collectors . . ., [and] insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." 15 U.S.C. §1692e. To that end, section 1692e prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt. *Id.* Likewise, section 1692f prohibits a debt collector from using "unfair or unconscionable means" to collect or attempt to collect any debt. 15 U.S.C. § 1692f. In broadly sweeping, yet incredibly generic terms, Jefferson's

Amended Complaint claims Nationstar violated sections 1692f, 1692f(1), 1692e, 1692e(2), 1692e(8), 1692e(5), 1692f(6),  1692e(11), 1692c, and 1692g. *See* Doc. 32, ¶¶ 42, 44, 45, 52, 53. All of Jefferson's FDCPA claims fail because either there is no evidence in the record to support them, or Jefferson's own testimony flatly contradicts her assertions. For example, in Paragraph 44 of the Amended Complaint, Jefferson claims Nationstar "misrepresented the character, amount and legal status of the . . . debt" in violation section 1692e(2) and/or failed to disclose that it was a debt collector in violation of 1692e(11) by sending incorrect default notices, sending an improper acceleration notice, sending erroneous monthly statements, and failing to properly identify itself in communications. *See* Doc. 32, ¶ 44. However, Jefferson admitted that has she never opened any mail from Nationstar and the evidence is undisputed that Nationstar sent accurate communications to Jefferson. *See* Ex. A, 177:10-13; 204:13-205:1.3; Ex. B, ¶¶ 32, 34.

Moreover, her own deposition testimony flatly contradicts some of her claims. For example, Jefferson's section 1692e(8) claim necessarily must be dismissed based upon her own testimony and the undisputed evidence.  Section 1692e(8), states that a debt collector may not "[c]ommunicate or threaten[] to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is

disputed." Here, Jefferson admits that she has no knowledge of credit reporting, or speaking with Nationstar or the CRAs about credit reporting on the Loan, and, the undisputed evidence is that Nationstar never received a dispute from the CRA's or Jefferson and properly credit reported the default status of the Loan. *See* Ex. A, 217:6-218:7; Ex. B, ¶¶ 35-38.

Jefferson's section 1692g claim also fails because it is contradicted by the record. Section 1692g provides that "within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall . . . send the consumer a written notice" containing certain information[16] and "shall cease debt collection activities if the customer disputes the debt within 30 days of receipt of that notice." 15 U.S.C. § 1692g(a)-(b). Here, it is undisputed that Nationstar sent Jefferson a debt validation letter with all of the information required under section 1692g. *Compare* Ex. B, ¶ 10, Ex. 4, pg. 3 *with* 15 U.S.C. § 1692g(a)(1)-(5); *see also* Ex. A, 152:3-153:9, Ex. 18.   It is also undisputed that Jefferson did not dispute the debt within the requisite 30 days (or at all). *See* Ex. A, 154:3-10; Ex. B, ¶ 11. Therefore, Jefferson's section 1692g claim

---

[16] In accordance with section 1692g(a), the following information must be included in the letter: "(1) the amount of the debt; (2) the name of the creditor to whom the debt is owed; (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt. . . the debt will be assumed to be valid by the debt collector; (4) a statement that if the consumer notifies the debt collector within the thirty-day period that the debt . . . is disputed, the debt collector will obtain verification of the debt. . . ; and (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor. . . " 15 U.S.C. § 1692g(a).

fails. *See Clark v. Shapiro and Pickett, LLP*, 452 Fed. Appx. 890, 895 (11th Cir. 2012) ("[T]he contents of the validation letter . . . complied with the requirements set forth in § 1692g(a), therefore the district court properly granted summary judgment."); *Miller*, 6:11-cv-2013 WL 12091325, at *20 ("Plaintiff did not dispute the debt within thirty days. . . . Therefore, Section 1692g(b)'s requirement was never triggered.").[17]

The crux of the FDCPA is to prevent false and misleading communications such as those so broadly alleged in Jefferson's Amended Complaint. However, in her own words, she cannot recall anything untruthful Nationstar has done, and her complaint boils down to the fact that Nationstar has not released the Insurance Funds:[18]

> Q.   So you don't know of anything Nationstar told you that was untrue?
> A.   I don't remember at this time.
> Q.   And you don't know whether Nationstar has told anybody else anything that's untrue either?
> A.   All I know, I was told that they had insurance money and have not released it at this time.

---

[17] Furthermore, summary judgment is warranted because Jefferson's section 1692g claim is time-barred. Nationstar sent the debt validation letter in July 2012. Jefferson sued Nationstar in 2015, well after the one-year statute of limitations on this claim had run.  Jefferson has not alleged that she sent any debt validation requests—either in July 2012 or thereafter.

[18] As explained above, Nationstar has tried diligently to release the Insurance Funds to Jefferson but Jefferson has not cooperated. *See supra*, ¶¶ 24-30.

*See* Ex. A, 602:2-603:4. When asked again what Nationstar "did wrong" all Jefferson could say was "I think Nationstar continue what Aurora started, that's what I really think." *See* Ex. A, 254:8-13. Her testimony continued:

Q.   . . .[W]hat would you have wanted Nationstar to do?
A.   I would have wanted Nationstar to assist Aurora in resolving the matter totally."

Q.   Can you be more specific?

A.   I can't be any more specific.

*See* Ex. A, 255:3-8. Here, at the summary judgment stage, Jefferson cannot stand on the generic allegations in her Amended Complaint. *See Adams*, 237 F. Supp. 3d at 1196. Specific facts are required. *Id.* (*citing Gargiulo v. G.M. Sales, Inc.*, 131 F.3d 995, 999 (11th Cir. 1997)( [The non-moving party] must come forward with specific factual evidence, presenting more than mere allegations.")). Jefferson has failed to provide any facts to support her Amended Complaint—which is, in itself, is a generic and form pleading (*see supra*, p. 17, n. 10). Accordingly, Nationstar is entitled to summary judgment on Jefferson's claims. *See Miller*, 6:11-cv- 2013 WL 12091325, at *20 (granting summary judgment in Nationstar's favor where plaintiff's complaint was "the model of legal conclusions as it simply parrot[ed] [the statutes] with no factual allegations" and no evidence was presented in discovery to support the allegations).

## V.   CONCLUSION

When the evidence presented by Nationstar is taken with the lack of evidence presented by Jefferson, the entire picture becomes clear. Jefferson went after Aurora while it was servicing the Loan—likely because Aurora had the power to foreclose on Jefferson's seriously delinquent Mortgage. However, when Jefferson settled her claims with Aurora, she quickly turned an opportunistic eye to Nationstar, the next servicer in the line. However, neither Jefferson's Amended Complaint against Nationstar—which appears to be a virtually form complaint filed repetitively by her lawyer in this Court—nor discovery in this case has borne any facts in support of her claims. Given the weight of the evidence that Nationstar tried to help Jefferson by modifying her Loan and remitting the Insurance Funds to her, and lack of proof that Nationstar committed any wrongdoing (and Jefferson's own testimony that contradicts her allegations in the Amended Complaint), Nationstar is due summary judgment on all claims.

Respectfully submitted this the 30th day of October, 2017.

*/s/ Ginny Willcox Leavens*
One of the Attorneys for Defendant
Nationstar Mortgage, LLC

**OF COUNSEL:**
Gregory C. Cook
Ginny Willcox Leavens
Michael P. Taunton
Balch & Bingham LLP
1901 Sixth Avenue North, Suite 1500

Birmingham, AL 35203-4642
Telephone: (205) 251-8100
E-mail:       gcook@balch.com
              gwillcox@balch.com
              mtaunton@balch.com

### CERTIFICATE OF SERVICE

I hereby certify that on this the 30th day of October, 2017, I have caused a true and exact copy of the above and foregoing to be served on the following counsel of record by electronic filing:

Kenneth James Lay
Rhonda Steadman Hood
Hood & Lay, LLC
1117 22nd Street, South
Birmingham, AL 35205

*/s/ Ginny Willcox Leavens*
Of Counsel