# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **CARTHENIA W. JEFFERSON,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No.: 2:16-CV-964-VEH** |
| ) | |
| **NATIONSTAR MORTGAGE LLC,** ) | |
| ) | |
| **Defendant.** ) | |

---

## MEMORANDUM OPINION

The only claims remaining in this civil action are filed by the Plaintiff,

Carthenia Jefferson, against the sole remaining Defendant, Nationstar Mortgage, LLC

("Nationstar").[1] The Amended Complaint alleges that Nationstar is liable to Jefferson

for violations of: the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692-1692p

(the "FDCPA") (Count One); the Fair Credit Reporting Act, 15 U.S.C. §§ 1681-

1681x (the "FCRA") (Count Two); and the Truth in Lending Act, 15 U.S.C. §§ 1601-

1616 (the "TILA"), including 12 C.F.R. § 226 (Federal Reserve Board Regulation Z).

The case comes before the Court on Nationstar's Motion for Summary

Judgment (the "Motion"). (Doc. 46). For the reasons stated herein, the Motion will

---

[1] The Court will not again set out the long and complex road this litigation has traveled. For that story, see document 26 in this case, and document 33 in *Aurora Loan Services LLC v. Jefferson et al.*, 2:16-cv-00078-VEH.

be **GRANTED**.

## I.  STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is proper if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("[S]ummary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.") (internal quotation marks and citation omitted). The party requesting summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party has met its burden, Rule 56(e) requires the non-moving party to go beyond the pleadings in answering the movant. *Id.* at 324. By its own affidavits – or by the depositions, answers to interrogatories, and admissions on file – it must designate specific facts showing that there is a genuine issue for trial. *Id.*

The underlying substantive law identifies which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All

reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *Chapman*, 229 F.3d at 1023. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248. A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* If the evidence presented by the non-movant to rebut the moving party's evidence is merely colorable, or is not significantly probative, summary judgment may still be granted. *Id.* at 249.

How the movant may satisfy its initial evidentiary burden depends on whether that party bears the burden of proof on the given legal issues at trial. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). If the movant bears the burden of proof on the given issue or issues at trial, then it can only meet its burden on summary judgment by presenting *affirmative* evidence showing the absence of a genuine issue of material fact – that is, facts that would entitle it to a directed verdict if not controverted at trial. *Id.* (citation omitted). Once the moving party makes such an affirmative showing, the burden shifts to the non-moving party to produce "significant, probative *evidence* demonstrating the existence of a triable issue of fact." *Id.* (citation omitted) (emphasis added).

For issues on which the movant does not bear the burden of proof at trial, it can

satisfy its initial burden on summary judgment in either of two ways. *Id.* at 1115-16. First, the movant may simply show that there is an absence of evidence to support the non-movant's case on the particular issue at hand. *Id.* at 1116. In such an instance, the non-movant must rebut by either (1) showing that the record in fact contains supporting evidence sufficient to withstand a directed verdict motion, or (2) proffering evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. *Id.* at 1116-17. When responding, the non-movant may no longer rest on mere allegations; instead, it must set forth evidence of specific facts. *Lewis v. Casey*, 518 U.S. 343, 358 (1996). The second method a movant in this position may use to discharge its burden is to provide affirmative *evidence* demonstrating that the non-moving party will be unable to prove its case at trial. *Fitzpatrick*, 2 F.3d at 1116. When this occurs, the non-movant must rebut by offering *evidence* sufficient to withstand a directed verdict at trial on the material fact sought to be negated. *Id.*

## II.    FACTS

The Plaintiff has proffered 29 facts in opposition to the Motion. However, in contravention of this Court's Uniform Initial Order (*see* doc. 10 at 18), and Rule 56(e), she has failed to provide citations to the record in support of <u>any</u> proffered fact. Indeed, the Plaintiff has merely "cut and pasted" allegations from her Amended

Complaint into the brief as her "facts." (*Compare* doc. 58 at 4-11, ¶¶1-29; doc. 32 at 3-8, ¶¶7-37). It is axiomatic that "Rule 56[] . . . requires the nonmoving party to go beyond the pleadings." *Celotex*, 477 U.S. at 324. Accordingly, the Court will not consider the Plaintiff's proffered facts.[2]

The facts proffered by the Defendant have not been sufficiently disputed by the Plaintiff, and are therefore deemed to be admitted for purposes of the instant motion.[3]

---

[2] The Plaintiff has also attached her affidavit to her brief (doc. 58-1 at 1-4), but never cites to it. The Court has not considered the affidavit. (*See* FED. R. CIV. P. 56(c)(3) ("The court need consider only the cited materials[.]"). Also, while the Plaintiff makes a few general references in the body of her brief to "Plaintiff's Deposition," she never cites specific portions thereof. Such a general "citation" is insufficient. The Court has not scoured the Plaintiff's deposition in search of support for the propositions she makes.

[3] *See* FED. R. CIV. P. 56(e)(2). Also, this Court's Uniform Initial Order, entered in this case on June 20, 2016, provides:

> The first section [of a brief in opposition to a Motion for Summary Judgment] must consist of only the non-moving party's disputes, if any, with the moving party's claimed undisputed facts. The non-moving party's response to the moving party's claimed undisputed facts shall be in separately numbered paragraphs that coincide with those of the moving party's claimed undisputed facts. Any statements of fact that are disputed by the non-moving party must be followed by a specific reference to those portions of the evidentiary record upon which the dispute is based. *All material facts set forth in the statement required of the moving party will be deemed to be admitted for summary judgment purposes unless controverted by the response of the party opposing summary judgment.*

(Doc. 10 at 17) (italics in original). In response to the Motion, the Plaintiff disputes only three of Nationstar's facts (nos. 14, 15, and 33). (Doc. 58 at 3). In doing so, Jefferson fails to cite a specific portion of the record in support of her dispute, referring the Court only generally to "Plaintiff's Deposition." As noted previously, that is hardly a "specific reference" to the record.

Those facts, included here verbatim, are:[4]

**A. <u>The inception of Jefferson's Home Mortgage Loan</u>**

1. On August 5, 2006, Jefferson executed a promissory note (the "Note") in favor of Home Loan Center, Inc. dba Lending Tree Loans ("Lending Tree") in the amount of $152,000.00.

2. Jefferson secured the Note by giving a mortgage on the certain property commonly known as 2128 Oakwood Drive, Birmingham, Alabama 35215 (the ["]Property") in favor of Mortgage Electronic Registration Systems, Inc. ("MERS"), solely as nominee for Lending Tree and its successors and assigns, recorded in Book LR 200613, Page 28564, in the Office of the Judge if Probate of Jefferson County, Alabama (the "Mortgage" and, together with the Note, the "Loan").

3. The Note required Jefferson to make monthly payments on the first day of each month to satisfy the debt.

4. Jefferson knowingly executed the Note and Mortgage, understood the payment terms, understood that she would be in default if she did not pay the full amount by the due date, and understood the fees, costs, and expenses that could be charged.

5. Jefferson also understood that the Mortgage required her to pay all[] assessments, and like charges attributable to the Property, that she was required to have insurance on the Property (otherwise insurance would be lender-placed and become additional borrower debt), and that she was to notify the lender and insurance carrier in the event of a loss and make repairs to the Property before insurance proceeds should be released.[5]

---

[4] Except as to one footnote which has been added with brackets, the footnotes included in this block quote are from the original. However, most footnotes from the block quote have been omitted.

[5] The Mortgage also provides that the lender has the "right to hold such insurance proceeds until lender has had an opportunity to inspect such property to ensure the work has been

**B. <u>Aurora's 2010 Foreclosure and Early Procedural History of This Case</u>**

6. Aurora Loan Services, LLC ("Aurora") serviced the Loan from the first payment due on the Loan (October 2006) until the servicing of the loan transferred to Nationstar on July 1, 2012.

7. Jefferson fell behind on the Loan payments in 2009.

8. In May 11, 2010, Aurora foreclosed on the Property, and a foreclosure deed vested title in Federal National Mortgage Association ("Fannie Mae").

9. On December 4, 2011, Aurora filed a lawsuit in the Jefferson County Circuit Court, seeking to set aside the foreclosure and reinstate the Mortgage (the "Original Complaint").

10. On May 11, 2012, Jefferson answered the Original Complaint and asserted counterclaims against Aurora, Fannie Mae, and Sirote & Permutt, PC ("Sirote") (the "Original Counterclaim").

11. Among other things, Jefferson claimed that as a result of Aurora's foreclosure, Alfa Insurance Company canceled her home insurance policy.

12. Because there was no insurance on the Property in 2012, Aurora lender-placed insurance, which increased Jefferson's monthly payments; and Jefferson fell behind on her re-instated Mortgage while Aurora was servicing the Loan.

13. While the Original Complaint and Original Counterclaim were

_____

completed to the lender's satisfaction, provided that such inspection shall be undertaken promptly" . . . and that the proceeds may be disbursed in "a series of payments as the work [is] completed" which Jefferson understood and agreed to. [(Doc. 48-1 at 23(87-88))].

pending, on July 1, 2012, servicing of the loan transferred from Aurora to Nationstar.

14. When Nationstar began servicing the Loan in July 2012, Jefferson was behind on her Mortgage payments and [] due for the December 2011 payment.

15. In July 2012, after it took over servicing of the Loan, Nationstar applied funds in the Loan suspense account as the December 2011, January 2012, and February 2012 payments, which made the Loan next due for the March 2012 payment (which is where it currently stands).

16. On December 2012, the Original Complaint was resolved by a Consent Order (1) expunging the foreclosure deed, (2) setting aside the foreclosure sale, and reinstating the Mortgage, leaving only the Original Counterclaim against Aurora and Fannie Mae.[6]

17. In November 2015, Aurora and Jefferson settled their dispute and the Original Counterclaim against Aurora was dismissed, leaving only the Original Counterclaim against Fannie Mae.

## C. Jefferson Adds Nationstar and the Insurance Defendants to the Case in December 2015, Shortly After She Settles with Aurora.

18. One month after settling with Aurora, on December 11, 2015, Jefferson filed an Amended Counterclaim adding claims against Nationstar, QBE First Insurance Agency, Inc., Balboa Insurance Company, and QBE Americas, Inc. (collectively, the "Insurance Defendants).

19. Nationstar and the Insurance Defendants removed the case to this Court on January 15, 2015[,] and, ultimately, this Court remanded the state law claims and retained jurisdiction only of the claims against Nationstar arising under the Truth in Lending Act ("TILA"), the Fair Credit Reporting Act ("FCRA"), and the Fair Debt Collection Practices

---

[6] The Court granted Sirote's motion to dismiss on August 12, 2012.

Act ("FDCPA").

20. On October 26, 2016, Jefferson filed an Amended Complaint[7] against Nationstar, including only the FCRA, TILA, and FDCPA claims.

## D. The 2010, 2011, and 2012[,] Property Damage and Jefferson's Insurance Claims

21. Before Nationstar began servicing the Loan in July 2012, the Property suffered damage from a[n] October 2010 burglary, [an] April 2011 tornado, and [a] January 2012 tornado (collectively, the "Damage").

22. Jefferson made insurance claims for the Damage (the "Insurance Claims").

23. On July 2, 2013[,] and August 15, 2013, QBE First Insurance Agency, Inc. remitted two checks to Aurora Bank FSB "For the Acct of Carthenia Jefferson" in the amounts of $1,105.23 and $18,867.77, respectively, to resolve the Insurance Claims, which in turn Aurora remitted to Nationstar – who was then servicing the Loan (the "Insurance Funds").

24. Immediately after Nationstar received the Insurance Funds, beginning on September 23, 2013, Nationstar began sending Jefferson letters asking her to contact Nationstar regarding the Insurance Claims.

25. Nationstar sent these letters to Jefferson at the Property address on or about 9/23/13, 10/18/13, 12/3/13, 12/17/13, 1/13/14, 3/24/15, 5/15/15, 6/15/15, 7/14/15, 8/26/15, 10/9/15, 11/18/15, and 12/1/15.

26. Jefferson did not respond to any of the letters. For example, when asked about the first letter Nationstar sent regarding the insurance proceeds on September 23, 2013, Jefferson testified:

---

[7] [See the Court's earlier opinions for an understanding of how Jefferson went from a Defendant filing "Counterclaims," to a Plaintiff filing "Complaints."]

Q. Okay. So you didn't respond to this letter?

A. No, sir.

[Doc. 48-1 at 46(177))].

27. According to Jefferson, she gave every letter she received from Nationstar to her attorney without opening it.

28. Jefferson never completed [a] Third Party Authorization form that would have allowed Nationstar to speak with her attorney.

29. In October 2013[,] and March 2015, Nationstar also sent Jefferson letters that had a detailed explanation of the documents/information it needed to release the Insurance Funds (and included the forms themselves).

30. Jefferson did not provide Nationstar any of the documents requested nor did she return any of the forms included in the October 2013[,] or March 2015[,] letters, including a Certificate of Intent to Repair.

31. After Jefferson filed her suit against Nationstar, Nationstar's counsel continued to write letters and emails to Jefferson's counsel to try and secure the information needed to release the Insurance Funds. There was no response.

32. Nationstar has not been able to release the Insurance Funds to Jefferson because she has not filled out and/or provided the required documents and Nationstar has not inspected any repairs to the Property (assuming any such repairs have been made).[8]

---

[8] Nationstar also called Jefferson about the Insurance Claims and, on most occasions, either left voicemails or Jefferson refused to speak with Nationstar. Nationstar did speak with Jefferson in March 2015 [and Jefferson then] asked Nationstar to send her proof of the insurance information needed (which is what prompted Nationstar to send her the March 2015 letters).

33. Nationstar is still holding the Insurance Funds in the Loan suspense account, and is prepared to release them as soon as Jefferson satisfies the requirements for doing so.

### E. **Jefferson and Nationstar's (Simple) History and Relationship.**

34. Jefferson's last payment on the Loan was on or about June 2012, while Aurora was still servicing the loan.

35. Jefferson has never made a payment to Nationstar.

36. Nationstar tried to help Jefferson resolve the payment delinquency and bring the Loan current in March 2015, by unilaterally (that is, without requiring Jefferson to [complete] a loan modification application) offering Jefferson loan modifications that would lower her interest rate from 7.375% to 4%, significantly reducing her payments.

37. Nationstar sent Jefferson the loan modification offer in March 2015, but Jefferson did not respond to Nationstar's offer.

38. After Jefferson sent Nationstar a hardship letter in April 2015, Nationstar again offered Jefferson a loan modification in June, September, and November 2015, but Jefferson did not respond or make the trial plan payments on any of these offers.

39. During the time it has been servicing the Loan, Nationstar has sent all of the required Loan notices and disclosures to Jefferson.

40. All of the notices, disclosures, letters, and/or communications Nationstar sent to Jefferson regarding her Loan were true and accurate.

41. For example, when Nationstar took over servicing of the Loan in July 2012, in its initial communication, it sent Jefferson a "welcome letter", a Notice of Assignment, Sale, or Transfer of Servicing Rights letter, and a debt validation letter. These letters contained true and accurate information concerning Jefferson's Loan and Jefferson did not dispute or raise any concerns with Nationstar about these letters.

42. Regarding the letters, Jefferson testified:

> Q. Today, as we sit here, do you know if there is anything wrong with what is on those three letters?
>
> A. As far as this total current amount due it, I don't know what the current total amount due is. Because, like I said, so much has been going on, so I am seriously uncertain [if] that is correct.
>
> Q. You don't have any personal knowledge either way, you just have reason to doubt that number?
>
> A. I have reason to doubt that.
>
> Q. But as we sit here today, you can't say right or wrong?
>
> A. I don't know, u-huh. But I have serious concerns.
>
> Q. I understand. But you didn't tell them anything about this?
>
> A. I did not. ...

[Doc. 48-1 at 40(154-155))].

43. All of the amounts Nationstar charged to Jefferson's Loan, including, but not limited to, fees, expenses, and other charges, were correct and valid under the terms of the Mortgage.

44. All of the amounts charged to the Loan escrow account were correct and valid under the terms of the Mortgage.

45. Nationstar accurately reported the default status of the Loan and the amount owed on the Loan to Jefferson, and Jefferson has never disputed the validity or accuracy of Nationstar's letters.

46. In fact, Jefferson has never communicated any concerns about her Mortgage to Nationstar.

47. Nationstar has never received a dispute (or any other communication) from Jefferson regarding credit reporting on the Loan.[9]

48. Nationstar has never received notice of a dispute from the Credit Bureaus/Credit Reporting Agencies regarding the credit reporting on the Loan.

49. Nationstar accurately credit reported on Jefferson's Loan.

50. When asked during her deposition about her interactions with Nationstar, Jefferson testified as follows:

> Q. So the last time we talked, I think I understood you to tell me that you really do not remember reading anything or communicating in any way with Nationstar?
>
> A. I do not recall.
>
> Q. You don't recall having conversations or receiving anything in writing from Nationstar?
>
> A. If I received something in writing I forwarded it to my attorney.
>
> Q. And you don't recall what if any of those things said that you received?
>
> A. No, sir.

---

[9] Indeed, Jefferson does not even know if Nationstar has ever credit reported about her or the Loan to the credit bureaus, she never disputed the credit reporting with the credit bureaus or Nationstar, and has produced no evidence that anyone ever did on her behalf.

Q. And you don't recall the substance of any conversations you had with Nationstar?

A. No, sir.

Q. So you don't know of anything Nationstar told you that was untrue?

A. I don't remember at this time.

Q. And you don't know whether Nationstar has told anybody else anything that's untrue either?

A. All I know, I was told that they had insurance money and have not released it at this time.

[(Doc. 48-13 at 69(602-603))].

(Doc. 47 at 4-15, ¶¶1-50) (citations omitted except for direct quotations).

## III.   ANALYSIS

### A.   <u>Summary Judgment Is Appropriate as to the FDCPA Claim (Count One)</u>

The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C.A. § 1692(e). The act prohibits "false, deceptive, or misleading representation or means in connection with the collection of any debt" 15 U.S.C.A. § 1692e, and "unfair or unconscionable means to collect or attempt to collect any debt" 15 U.S.C.A. § 1692f. It also sets out the ways in which "a debt collector may . . . communicate with a consumer" and "third parties" 15 U.S.C.A. §

1692c(a), (b), and the requirement that a debt collector "validate" the debt with the consumer, 15 U.S.C. § 1692g.

In Count One of the Amended Complaint, the Plaintiff alleges that the Defendant violated numerous sections of FDCPA. Nationstar moves for summary judgment, claiming that there is no evidence that it has violated <u>any</u> provision of the FDCPA. (Doc. 47 at 24-29). It further explains:

> [T]hroughout two full days of deposition testimony, Jefferson could not recall a single thing Nationstar did wrong other than "continue what Aurora started" and refuse to release the insurance proceeds. [(*See* doc. 48-13 at 69(602-603))]. When shown the principal balance of the debt, for example, Jefferson admitted she had no knowledge that it was incorrect. [(*See* doc. 48-1 at 73(288)-74(289))]. When asked about her knowledge of Nationstar's alleged acceleration of the loan or notice of foreclosure, she testified that she had no knowledge of an acceleration or notice of foreclosure. [*See* doc. 48-1 at 55(216)-56(219))]. Although she alleges that the statements she received from Nationstar are incorrect, in her deposition testified that she does not recall ever getting any statements from Nationstar. [*Id.*] When asked whether she was "aware of any specific provisions in the Note or Mortgage that Nationstar has breached", she answered "No, sir." [*See* doc. 48-1 at 55(216)-56(217))].

(Doc. 47 at 24-25) (footnotes omitted).

In response, the Plaintiff alleges "the [D]efendant committed multiple violations of 15 U.S.C. §§ 1692c, 1692e(2), 1692e(8), 1692e(11)[,] and 1692f(1)." (Doc. 58 at 15). However, instead of setting out and explaining how Nationstar violated these lengthy sections, or providing evidence in support of her allegations,

Jefferson spends the next few pages of her brief rebutting "[t]he defendant's primary argument . . . that they [sic] are not 'debt collectors' for purposes of the FDCPA." (Doc. 58 at 15; *see also* doc. 58 at 15-18). Nationstar makes no such argument. (*See* doc. 59 at 7 ("Jefferson . . . [argues] that Nationstar is a 'debt collector' for the purposes of the FDCPA, a point which Nationstar did not even argue in support of summary judgment.").[10] She then contends that Nationstar "has never successfully shifted the burden to her" to prove that its actions were "deceptive, unfair, or abusive." (Doc. 58 at 19). This argument is without merit. *See*, *Fitzpatrick*, 2 F.3d at 1116-1117 (explaining that for issues on which the movant does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment by simply showing that there is an absence of evidence to support the non-movant's case on the particular issue at hand, and that the non-movant must then rebut by producing evidence).

The Plaintiff argues that Nationstar "has not addressed, and has not . . . considered" whether statutory damages may be awarded . . . absent actual damages. (Doc. 58 at 19). This argument, which also fails to explain how Nationstar violated the FDCPA in the first place, is without merit.

---

[10] The Plaintiff also makes the same argument elsewhere in her brief. (*See* doc. 58 at 12-13, 14).

The Plaintiff also argues that she "create[s] a reasonable inference that [Nationstar] attempted non-judicial foreclosure" in violation of 15 U.S.C. § 1692f(6). (Doc. 58 at 13-14). However,she provides no evidence that Nationstar participated in any way in the foreclosure of her home. Similarly, she argues:

> Here the Defendant violated 15 U.S.C. § 1692f (1) by collecting or attempting to collect debts by using methods not permitted by law and by otherwise using unfair and unconscionable methods. The Defendant sought unjustified amounts, which would include demanding any amounts not permitted under an applicable contract or as provided under applicable law in violation of the Act §1692f(1). By seeking to collect the incorrect amount of debt in its default and acceleration notices, the Defendant violated the Act. Moreover, NationStar violated the Act by instituting an improper foreclosure based on an improper acceleration which contained an incorrect amount in the notice. Here, Jefferson has provided substantial evidence in support of her claims pursuant to FDCPA and said claims are due to survive NationStar's motion for summary judgment. See Plaintiff's deposition.

(Doc. 58 at 14-15). This argument, which contains only bare (and vague) allegations and a vague reference to "Plaintiff's deposition," is without merit. Furthermore, it is undisputed that all of the amounts Nationstar charged to Jefferson's Loan and escrow account, including, but not limited to, fees, expenses, and other charges, were correct and valid under the terms of the Mortgage. Summary judgment will be granted in favor of Nationstar, and against Jefferson, on the FDCPA claims.[11]

---

[11] The Court here has set out all of the sections of the FDCPA which the Plaintiff discussed in her brief. The Court deems abandoned any claim by the Plaintiff that the Defendant violated some section of the FDCPA which the Plaintiff alleged in her Amended Complaint but

**B.    Summary Judgment Is Appropriate on the FCRA Claim (Count Two)**

The Eleventh Circuit has noted:

> The FCRA governs claims by consumers . . . against a furnisher of information . . . . based on an allegation that the furnisher submitted incorrect information regarding the consumer to CRAs. *See generally* 15 U.S.C. §§ 1681a(c) & (f), 1681s–2(a). The FCRA imposes two separate duties on furnishers. First, § 1681s–2(a) requires furnishers to submit accurate information to CRAs. Second, § 1681s–2(b) requires furnishers to investigate and respond promptly to notices of customer disputes.

*Green v. RBS Nat. Bank*, 288 F. App'x 641, 642 (11th Cir. 2008). The Defendant argues that there is no evidence that it violated the FCRA in any way. The Plaintiff begins her rebuttal by stating that "Nationstar, as a furnisher [of credit information], is liable for failing to conduct a reasonable investigation of the consumer's dispute after the furnisher receives notice of the dispute from a consumer reporting agency." (Doc. 58 at 20).

The Plaintiff has provided no evidence that Nationstar furnished any credit information regarding the Plaintiff to any person or entity[12], received notice of a

---

did not address in her brief. *See Resolution Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("[G]rounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned[.]"). Regardless, the complete failure of the Plaintiff to cite to <u>any evidence</u> as to <u>any violation</u> of <u>any statute</u> under which she sues Nationstar is fatal to <u>all</u> of her claims.

[12]   Indeed, in her deposition, the Plaintiff testified that she was not aware of whether Nationstar had reported anything about her to the credit bureaus. (Doc. 48-1 at 56(217)).

dispute, or failed to conduct an investigation of a dispute.[13] The Plaintiff also writes:

> If the plaintiff has evidence that she made a dispute to a credit reporting agency (and she does), that the credit reporting agency notified the defendants of the dispute (and the defendants have failed to show she does not), and that the false information nevertheless was not corrected (and she does), a reasonable inference from those facts is that the defendants did not notify the credit reporting agencies that the plaintiff's mortgage was not foreclosed or that the previous foreclosure was rescinded. The plaintiff testified that the false reporting continued from entry of the consent order in 2012 up until the date of her deposition. The plaintiff also testified that she sent her disputes to the credit reporting agencies by fax and that she did so multiple times.

(Doc. 58 at 22). The Plaintiff cites to no evidence in support of any of these statements, and, as shown above, is incorrect to the extent that she is arguing that the Defendants must present some affirmative evidence which <u>disproves</u> some portion of this claim. Furthermore, it is undisputed that:

– Nationstar accurately reported the default status of the Loan and the amount owed on the Loan to Jefferson, and Jefferson has never disputed the validity or accuracy of Nationstar's letters.

– Jefferson has never communicated any concerns about her Mortgage to Nationstar.

– Nationstar has never received a dispute (or any other communication) from

---

[13] In her deposition, the Plaintiff testified that she was not aware of whether she had disputed anything in her credit report. (Doc. 48-1 at 56(217)).

Jefferson regarding credit reporting on the Loan.

– Nationstar has never received notice of a dispute from the Credit Bureaus/Credit Reporting Agencies regarding the credit reporting on the Loan; and

– Nationstar accurately credit reported on Jefferson's Loan.[14]

Summary judgment will be granted in favor of Nationstar and against Jefferson on the FCRA claim.

### C. Summary Judgment Is Appropriate on the TILA Claim (Count Three)

In Count Three, the Plaintiff seeks damages pursuant to 15 U.S.C. § 1640(a) and alleges:

> Defendants did not provide a proper copy of the notices required by the Act to the Plaintiff. The disclosure statement issued in conjunction with this consumer credit transaction violated the requirements of Truth in Lending and Regulation Z in the following and other respects: (a). By failing to provide the required disclosures prior to consummation of the transaction in violation of 15 U.S.C.§ 1638(b) and Regulation Z § 226.17(b). (b). By failing to make required disclosures clearly and conspicuously in writing in violation of 15 U.S.C. § 1632(a) and Regulation Z § 226.17(a). (c). By failing to include in the finance charge certain charges imposed by Defendants payable by plaintiff incident to the extension of credit as required by 15 U.S.C. § 1605and Regulation Z § 226.4, thus improperly disclosing the finance charge in violation of 15 U.S.C. § 1638(a)(3) and Regulation Z § 226.18(d). Such amounts

---

[14] Even if it did not, the FCRA does not provide a private right of action to redress such a violation. *Green*, 288 F. App'x at 642.

20

include, but are not limited to the attorney fees and late fees, 15 U.S.C. § 1605(a), Regulation Z§ 226.4(a).

72. The regulations require that the notice shall identify the transaction or occurrence and clearly and conspicuously disclose the following: The retention or acquisition of a security interest in the consumer's principal dwelling. The consumer's right to rescind, as described in paragraph (a)(1) of this section. How to exercise the right to rescind, with a form for that purpose, designating the address of the creditor's place of business. The effects of rescission, as described in paragraph (d) of this section. The date the rescission period expires. (See Reg. Z §§ 226.15(b)(5) and 226.23(b).

73. By charging "attorney fees" and other "fees" not authorized by the mortgage contract, Defendants has made unauthorized charges and failed to disclose these charges in violation of the Act. In this case, Defendants added fees to Jefferson's account in August 2015 and September 2015 which are referenced in the notice of default. Moreover, once the account was turned over to the attorney for foreclosure in October 2015, additional fees were improperly added to the account. Each time a default notice was sent to the Plaintiff up to and including September 2016, Defendants added additional and unauthorized fees to Jefferson's account balance.

74. By calculating the annual percentage rate (APR) based upon improperly calculated and disclosed finance charges and amount financed, 15 U.S.C. § 1606, Regulation Z§ 226.22, Defendants understated the disclosed annual percentage rate in violation of 15 U.S.C. § 1638(a)(4) and Regulation Z § 226.18(c).

75. That the Defendants have been improperly amortizing the loan, and have failed to provide proper disclosures to the Plaintiff. Defendants failed to send proper monthly statements to Jefferson in violation of the Act.

(Doc. 32 at 17-18, ¶¶71-75). The Defendant moves for summary judgment, arguing

that there is no evidence that it engaged in any of the conduct alleged by the Plaintiff.

In response, just as with her other claims, the Plaintiff provides no evidence of any violation of TILA or Regulation Z.[15] Furthermore, and as noted previously, it is undisputed that all of the amounts Nationstar charged to Jefferson's Loan, and the escrow account, including, but not limited to, fees, expenses, and other charges, were correct and valid under the terms of the Mortgage.

Furthermore, even if the Plaintiff had provided evidence of some violation, any action on same must be brought "within one year from the date of the occurrence of the violation." 15 U.S.C.A. § 1640(e). "[A] TILA nondisclosure 'violation "occurs" when the transaction is consummated,' in other words, at the time of closing of a residential mortgage transaction." *Frazile v. EMC Mortg. Corp.*, 382 F. App'x 833, 838 (11th Cir. 2010) (*quoting Smith v. Am. Fin. Sys., Inc. (In re Smith)*, 737 F.2d 1549, 1552 (11th Cir.1984)). A non-disclosure violation "'is not a continuing violation for purposes of the statute of limitations.'" *Id.* The mortgage and note were executed on August 5, 2006. Any "violation" would have occurred on that date, and the statute of limitations for bringing an action regarding same would have expired

---

[15] The Court rejects the Plaintiff's vague referenced to her "testimony," without citation thereto, and her arguments that she does not have to provide evidence to support her claims. (*See* Doc. 58 at 26-27). Furthermore, the Court rejects the Plaintiff's contention that summary judgment is inappropriate because TILA provides for statutory damages. The Plaintiff must still show that TILA has been violated.

on August 5, 2007.[16]

Finally, as the Eleventh Circuit has noted

The TILA imposes the duty to disclose upon "creditors" as that term is defined by 15 U.S.C. § 1602. Section 1602(f) defines "creditor" as follows:

> The term "creditor" refers only to a person who both (1) regularly extends ... consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness....

15 U.S.C. § 1602. The parallel provision in Regulation Z provides:

> Creditor means: (i) A person (A) who regularly extends consumer credit that is subject to a finance charge or is payable by written agreement in more than 4 installments (not including a downpayment), and (B) to whom the

---

[16] The Plaintiff argues:

> Suit under Sections 1639, 1639b or 1639c must be brought "before the end of the 3-year period beginning on the date of the occurrence of the violation." 15 U.S.C. § 1640(e).

(Doc. 58 at 26). However, the statute <u>actually</u> reads:

> An action to enforce a violation of section 1639, 1639b, 1639c, 1639d, 1639e, 1639f, 1639g, or 1639h of this title may also be brought <u>by the appropriate State attorney general</u> in any appropriate United States district court, or any other court of competent jurisdiction, not later than 3 years after the date on which the violation occurs.

15 U.S.C.A. § 1640(e) (emphasis added). The statute of limitations available to the <u>Plaintiff</u> is one year.

> obligation is initially payable, either on the face of the note
> or contract, or by agreement when there is no note or
> contract.
>
> 12 C.F.R. § 226.2(a)(17). Section 1640 provides that creditors who fail
> to comply with the TILA's disclosure requirements are subject to civil
> liability. 15 U.S.C. § 1640(a) ("[A]ny creditor who fails to comply with
> any requirement imposed under this part, including any requirement
> under section 1635 of this title ... with respect to any person is liable to
> such person....").

*Parker v. Potter*, 232 F. App'x 861, 864 (11th Cir. 2007). The Defendant points out,

correctly, that the Plaintiff fails to provide any evidence that it is a "creditor" under

TILA.[17] Indeed, even assuming that Nationstar "regularly extends consumer credit

that is subject to a finance charge or is payable by written agreement in more than 4

installments (not including a downpayment)," it is undisputed that it was Lending

Tree, not Nationstar, to whom the debt was originally payable. Nationstar is not a

"creditor" under TILA. Summary judgment will be granted in favor of Nationstar, and

against Jefferson, as to Count Three.[18]

---

[17] The Plaintiff does not even address this argument in her brief.

[18] The Court also takes judicial notice of the Circuit Court of Jefferson County's recent decision, on July 20, 2018, in *Jefferson v. Federal National Mortgage Association, et al.* 01-CV-2011-904407.00, in which that Court, addressing the claims remanded by this Court, found that:

> The record shows that Nationstar sent the required notices and disclosures to
> Jefferson under the Loan and that Nationstar's communications with Jefferson
> were true and correct, as were the amounts Nationstar charged to Jefferson's loan.
>
> Likewise, the record demonstrates that Nationstar accurately reported the default
> status of the Loan and the amount owed on the Loan to Jefferson, and Jefferson

## IV. CONCLUSION

For the foregoing reasons, summary judgment will be **GRANTED** in favor of

Nationstar and against Jefferson on all counts of the Amended Complaint. The Court

interprets the Defendant's request for "costs and fees" in its reply brief (*see* doc. 59

at 11), as a motion for sanctions. That motion is **DENIED**.

**DONE** and **ORDERED** this 26th day of July, 2018.

_____
**VIRGINIA EMERSON HOPKINS**
United States District Judge

---

has never disputed the validity or accuracy of Nationstar's letters. Nationstar has never received a dispute (or any other communication) from Jefferson or the Credit Bureaus regarding credit reporting on the Loan.

(Doc. 60 at 9-10, ¶¶13-14). The state court also found:

It is undisputed that Jefferson has never made a payment to Nationstar. Further, Jefferson has presented no evidence to dispute that the amounts charged by Nationstar on Jefferson's loan were correct and valid under the terms of the Mortgage.

(Doc. 60 at 14). The Defendant argues that "[b]ased on these findings alone, should this Court agree with the Jefferson County Circuit Court, Nationstar's pending motion for summary judgment is clearly due to be granted." (Doc. 60 at 2). This Court's holding is based on the undisputed facts and law in this case.